**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

UNITED STATES OF AMERICA          :
                                  :
        v.                        :
                                  :        Case No. 16-cr-00595 (JPO)
BRIAN BLOCK,                      :
                                  :
        Defendant.               :
                                  :
-------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS AND STRIKE**

Reid H. Weingarten
Michael C. Miller
Michelle L. Levin
Michael G. Scavelli
Jeffrey A. Novack
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Brian S. Block*

Dated: February 28, 2017

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................................1

II.    BACKGROUND ...................................................................................................................3

    A.    Factual Background ...............................................................................................4

        1.    ARCP ............................................................................................................4

        2.    FFO and AFFO .............................................................................................5

        3.    ARCP's Q1 2014 Financial Reporting .........................................................6

        4.    ARCP's Q2 2014 Financial Reporting .........................................................9

    B.    Procedural Background..........................................................................................12

III.    STANDARD.........................................................................................................................13

    A.    Motions to Dismiss ...............................................................................................13

    B.    Motion to Strike ....................................................................................................14

IV.    ARGUMENT........................................................................................................................14

    A.    The Unprecedented Indictment Violates Due Process...........................................14

    B.    The Indictment Fails to Adequately Allege that ARCP's Q2 2014 AFFO
        Reporting Was Materially False and Misleading...................................................16

        1.    ARCP's Q1 2014 AFFO Reporting, Which the Government
            Asserts Flowed Into Q2 2014 Reporting, Was Neither False Nor
            Misleading...................................................................................................16

        2.    Any Other Supposed Misstatement Was Immaterial....................................18

    C.    Portions of the Indictment Should Be Stricken......................................................21

V.    CONCLUSION.....................................................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Berger v. Apple REIT Ten, Inc.*,
  563 F. App'x 81, 84 (2d Cir. 2014) ............................................................................18

*ECA v. JPMorgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009).......................................................................................19

*Ganino v. Citizens Utilities Co.*,
  228 F.3d 154 (2d Cir. 2000).................................................................................5, 19

*In re Apple REITS Litig.*,
  No. 11-CV-2919, 2013 WL 1386202 (E.D.N.Y. Apr. 3, 2013) ..............................18

*Ironworkers Local 580 v. Linn Energy, LLC*,
  29 F. Supp. 3d 400, 426 (S.D.N.Y. 2014)...........................................................16, 17

*Johnson v. United States*,
  135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015).............................................................14

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret.
  Ass'n v. MDC Partners, Inc.*,No. 15 CIV. 6034 (RJS),
  2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016)..............................................16, 17, 18

*Parnes v. Gateway 2000, Inc.*,
  122 F.3d 539 (8th Cir. 1997) ....................................................................................19

*Russell v. United States*,
  369 U.S. 749 (1962)....................................................................................................14

*S.E.C. v. Cohen*,
  No. 4:05 Civ. 371, 2007 WL 1192438 (E.D.N.Y. Apr. 19, 2007).......................20, 21

*United States v. Alyenikov*,
  737 F. Supp. 2d 173 (S.D.N.Y. 2010)........................................................................13

*United States v. Capoccia*,
  503 F.3d 103 (2d Cir. 2007).......................................................................................14

*United States v. Covington*,
  395 U.S. 57 (1969)........................................................................................................4

*United States v. Ferguson*,
  676 F.3d 260 (2d Cir. 2011)..................................................................................14, 21

*United States v. Flores,*
    404 F.3d 320 (5th Cir. 2005) .................................................................................4

*United States v. Frutos-Lopez,*
    627 F. Supp. 2d 1164 (C.D. Cal. 2008) ..................................................................4

*United States v. Hess,*
    124 U.S. 486 (1888)...........................................................................................14

*United States v. Lanier,*
    520 U.S. 259 (1997)......................................................................................14, 15

*United States v. Stavroulakis,*
    952 F.2d 686 (2d Cir. 1992)................................................................................14

**STATUTES**

17 C.F.R. § 240.10b-5.............................................................................................16

15 U.S.C. § 78k(b) ..................................................................................................16

18 U.S.C. § 1001 .....................................................................................................16

18 U.S.C. § 1350......................................................................................................13, 16

**RULES**

Fed. R. Crim P. 7(d)..................................................................................................21

Fed. R. Crim. P. 12(b)(1) ..........................................................................................4

Fed. R. Crim. P. 12(b)(2) ..........................................................................................13

**S.E.C. PUBLICATIONS**

S.E.C. Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (Aug. 19, 1999)...........................19

Defendant Brian S. Block ("Mr. Block") respectfully submits this memorandum of law in support of his motion to dismiss or, alternatively, strike portions of the Government's September 7, 2016 indictment (the "Indictment").

## I.   INTRODUCTION

Mr. Block is the former Chief Financial Officer of American Realty Capital Properties, Inc. ("ARCP") – a real estate investment trust ("REIT") with over $20 billion in assets and more than $1 billion in annual revenue. The Government accuses Mr. Block and others of causing ARCP to make a $13 million misstatement, on a measure for which there is no accepted standard, for a single reporting period – Q2 2014. On that basis, the Government has charged Mr. Block with serious financial fraud. But the Indictment itself plays fast and loose with its core financial allegations. It should be dismissed for two principal reasons: (1) it violates due process; and (2) it fails to adequately allege that ARCP's Q2 2014 financial reporting was materially false and misleading.

First, the Indictment fails as a matter of due process. The Indictment's charges are unprecedented, and fail to provide constitutionally sufficient notice, in several respects. They rely exclusively on an alleged misstatement of a measurement that lacks any definition under Generally Accepted Accounting Principles ("GAAP"). We are aware of no prior criminal charges predicated on the reporting of a non-GAAP measurement. Moreover, the particular non-GAAP measurement at issue – Adjusted Funds From Operations ("AFFO") – is not subject to any uniform rules, standards, or even industry consensus on how it should be calculated. And the amount of the alleged misstatement is immaterial as a matter of law.

Second, the Indictment fails to adequately allege that ARCP's Q2 2014 financial reporting was materially false and misleading. The Indictment broadly makes two claims:

1

*Claim 1: ARCP's Q2 2014 financial reporting was materially false because ARCP's Q1 2014 financial reporting was erroneous and was incorporated into Q2 2014's financial reporting.* According to the Indictment, there were only "two permissible methods" of calculating AFFO, and ARCP erroneously calculated AFFO in Q1 2014 by using a combination of the "net method" (using figures based on the financial performance of ARCP excluding certain outside shareholders) and the "gross method" (using figures based on the financial performance of ARCP including all shareholders).[1] According to the Indictment, this produced an overstatement of 3 cents in AFFO per share in Q1 2014. Ind. ¶ 15. While the Indictment's charges are not based on Q1 2014 reporting, the Indictment appears to allege that Q2 2014's reporting was false and misleading, in part, because Q1's purportedly improper reporting flowed into Q2.

*Claim 2: ARCP's Q2 2014 financial reporting was materially false because a $13 million adjustment was made without basis.* According to the Indictment, a "correction" of the overstatement from Q1 2014 would have resulted in a $13 million shortfall in AFFO in Q2 2014. Ind. ¶ 19. The Indictment alleges that ARCP instead used certain unspecified figures "without justification" that inflated its AFFO by approximately $13 million for the Q2 2014. *Id.* The Government claims that this produced the same 3 cents per share inflation from Q1 2014, or allegedly 5%, in ARCP's year-to-date ("YTD") AFFO calculation. Ind. ¶ 25.

Neither claim holds.

ARCP's Q1 2014 reporting did not lead to a false Q2 2014 filing because the Q1 2014 reporting was fair and not inconsistent with any established accounting guidance. The Indictment identifies no accounting standard to support its claim that there is a proper method to calculate AFFO or that the so-called "gross method" and "net method" are the only "permissible methods." Ind. ¶ 15. In fact, we do not believe there is any such accounting standard or principle that imposes the limitations alleged by the Government. Moreover, ARCP's use of a calculation for AFFO that used a combination of the "gross" and "net" methods was plain from the face of its public filings, which reflect that ARCP had followed this same approach for the

---

[1]   ARCP did not use the terms "net method" and "gross method" in its AFFO disclosures during the relevant time period. Nor were they used in the industry during the relevant time period. They are used in this brief solely for ease of reference.

prior five quarters. Thus, to the extent the Indictment claims that ARCP's Q2 2014 AFFO reporting was inaccurate based on Q1 2014, this charging theory fails.

Even accepting the Government's claim that AFFO was improperly inflated by $13 million in Q2 2014 (a claim we vigorously dispute), the alleged misstatement was immaterial. As an initial matter, the Government's calculations are mathematically inaccurate. Since reported AFFO for the first six months of 2014 was approximately $353 million, the alleged $13 million overstatement is approximately 3.8% of AFFO (or 1.8 cents per share or 3.8% of AFFO per share), well below the 5% threshold for quantitative materiality used for GAAP measurements (let alone the non-GAAP measurement at issue here). Even crediting the Government's math, an alleged 3 cent per share overstatement of a non-GAAP metric over a six-month period can hardly be classified as material. This is especially so given that ARCP had $20 billion of assets, was posting hundreds of millions in revenue each quarter, and its financial performance was evaluated based on (among other things) the quality of its real-estate properties and not the interim reporting of one of several non-GAAP measures. Using any accepted materiality analysis, the misstatement alleged by the Government is not material as a matter of law.

For these reasons, there is no proper basis for the charges in the Indictment and it should be dismissed. If it is not, the following portions of the Indictment should be stricken: (1) paragraphs 12, 15, 16, 17, 18, and 19 because, and to the extent, they erroneously claim that there was a proper method to calculate AFFO and that ARCP's method was improper; and (2) paragraph 25, which erroneously recites the 3 cents and 5% figures.

## II.    BACKGROUND

We detail below the relevant factual and procedural background.

3

A.    Factual Background[2]

     1.    ARCP

ARCP[3] is a publicly-traded REIT. Ind. ¶¶ 1, 5. The company principally acquires, owns and operates single-tenant, freestanding commercial real estate properties. It was and is a fully solvent company with substantial business operations. As of the end of the first quarter of 2014, ARCP owned 3,809 properties consisting of 101.8 million square feet, had more than $20 billion in assets, and generated revenue of more than $320 million for the quarter (and over $1 billion annually). Ex. A.[4] ARCP was also undergoing a period of transformative growth at the time. Its total assets had grown from approximately $7.8 billion in Q4 2013 to the over $20 billion reported in Q1 2014. *Id.* at 1. Its Q1 2014 revenue – approximately $320.6 million – was almost 7.5 times greater than in the same reporting period the prior year. *Id.* at 2.

Like many REITs, ARCP did not directly own the real estate in which it invested. Ind. ¶ 11. Instead, ARCP owned approximately 97% of the common stock of a subsidiary operating partnership (the "OP"), which held the real estate assets. *Id.* The other approximately 3% of the OP was owned by outside shareholders, which held non-controlling interests in the OP ("non-controlling interests," or "NCI"), also referred to as OP Units. *Id.*

---

[2]    The background contained herein is drawn, in part, from the Indictment. Though we vigorously dispute the Indictment's allegations, they are accepted as true solely for purposes of this motion to dismiss.

[3]    ARCP is now known as VEREIT, Inc.

[4]    American Realty Capital Properties, Inc., Quarterly Report (Form 10-Q) (May 8, 2014) ("Q1 2014 Form 10-Q"). This filing is referenced in but not attached to the Indictment. It is attached to this motion as Exhibit A. The Court may consider this document and other publicly available materials (including Exhibits B, C, D, E, F, and G) because their contents are undisputed. *United States v. Covington*, 395 U.S. 57, 60 (1969) (noting that, under Federal Rule of Criminal Procedure 12(b)(1), any defense capable of determination without a trial may be raised before trial by motion); *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (recognizing that it is permissible to look beyond the indictment to resolve issues of law on undisputed facts); *United States v. Frutos-Lopez*, 627 F. Supp. 2d 1164, 1166 (C.D. Cal. 2008) (recognizing that extrinsic evidence may be considered on a Rule 12(b) motion to dismiss).

4

### 2.   FFO and AFFO

Among the performance metrics disclosed by ARCP on a quarterly basis were Funds From Operations ("FFO") and AFFO.  These two measurements are among several metrics that are unique to the REIT industry.  Ind. ¶¶ 6-7.  Neither measure is part of or defined by GAAP. GAAP are "the official standards adopted by the American Institute of Certified Public Accountants (the 'AICPA'), a private professional association, through three successor groups it established: the Committee on Accounting Procedure, the Accounting Principles Board (the 'APB'), and the Financial Accounting Standards Board (the 'FASB')."  *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 170 n. 4 (2d Cir. 2000).

FFO is a supplemental measure to the GAAP metric of net income that is tailored to the real estate industry.  FFO "measures net income, excluding gains or losses from sales of property, but including . . . real estate depreciation expense."  Ind. ¶ 6.  It is defined by the National Association of Real Estate Investment Trusts ("NAREIT") as "net income (computed in accordance with GAAP), excluding gains (or losses) from sales of property, plus depreciation and amortization, and after adjustments for unconsolidated partnerships and joint ventures."[5]  In short, FFO begins with net income and "adds back" certain expenses to reach the FFO figure.

AFFO, by contrast, lacks any standard definition (from NAREIT or elsewhere) or even any definitive methodology guidance from any governmental, regulatory, or industry body. According to NAREIT, while "there is some considerable overlap among analysts as to what might be appropriate" when calculating AFFO, "there is not adequate consensus among

---

[5]   *White Paper on Funds From Operations*, NAREIT (April 2002), at 2, https://www.reit.com/sites/default/files/media/Portals/0/Files/Nareit/htdocs/policy/accounting/2002_FFO_White_Paper.pdf.

preparers and users of" AFFO "to allow agreement on a single definition."[6] Instead, the calculation of AFFO involves discretion and subjective assumptions regarding, among other things, the categorization, inclusion, and representation of costs and revenues, and expectations for continued business operations. It is intended to provide a hypothetical view of a "normal" reporting period for a REIT. As a result, AFFO is calculated differently by different REITs, investors, and market analysts.[7]

With this in mind, AFFO is generally calculated by adding back all of the FFO addbacks plus other "one-time" expenses – expenses that are not anticipated to recur – to net income. *See id.* ¶ 7. As noted above, REITs must exercise their own judgment, however, in deciding which expenses are "one-time" expenses. Also, because ARCP does not own all of the equity interests in the operating partnership – the entity that directly owns the underlying real estate assets – ARCP, like other REITs, can make certain adjustment for the small amount of equity interests in the OP that are held by the non-controlling interests (approximately 3%) when calculating and reporting AFFO.

### 3. ARCP's Q1 2014 Financial Reporting

In Q1 2014, Mr. Block served as the Chief Financial Officer of ARCP. Ind. ¶ 2. On May 8, 2014, ARCP issued its Q1 2014 Form 10-Q and Q1 2014 Form 8-K,[8] which included a table

---

6    *Id.* at 6.

7    Illustrating the lack of clear consensus in the area, there have been numerous S.E.C. comment letters in recent years addressing varying methods of calculating FFO and AFFO, and varying ways of presenting FFO and AFFO in public filings. As far as we are aware, none of these comment letters resulted in either a civil enforcement proceeding or a criminal charge. Indeed, we are aware of only one prior enforcement proceeding brought by the S.E.C. based on the presentation of a non-GAAP metric, and that case was coupled with allegations of backdating and misstatements of GAAP earnings results. *S.E.C. v. Safenet, Inc.* https://www.sec.gov/litigation/complaints/2009/comp21290.pdf.

8    American Realty Capital Properties, Inc., Current Report (Form 8-K), Exhibit 99.2 (May 8, 2014) ("Q1 2014 Form 8-K"). This filing is attached to this motion as Exhibit B.

disclosing its FFO and AFFO figures. Both filings cautioned, however, that these were non-GAAP metrics and were less relevant than GAAP metrics, such as net income, and were offered to provide context. The filings noted:

> FFO . . . provides a more complete understanding of our performance . . . . The method utilized to evaluate the value and performance of real estate under U.S. GAAP should be construed as a more relevant measure of operational performance and considered more prominently than the non-[] GAAP FFO and AFFO measures and the adjustments to U.S. GAAP in calculating FFO and AFFO. . . . AFFO provides useful supplemental information.

Ex. A at 64-65; Ex. B at 34-35.

The filings further advised that "[o]ther REITs may . . . calculate AFFO differently than we do. Consequently, our presentation of FFO and AFFO may not be comparable to other similarly titled measures presented by other REITs." Ex. A at 66; Ex. B at 36.

While the Government alleges ARCP's presentation of AFFO in Q1 2014 was improper, ARCP's approach to presenting the FFO and AFFO figures in the 10-Q and 8-K was consistent with its public disclosures in the five previous reporting periods and plain to the market. First, ARCP's Q1 2014 Form 8-K made plain that the net income used to calculate AFFO excluded the approximately 3% of net loss attributable to non-controlling interests, and therefore reflected a so-called "net" figure.

| *Page 8: ARCP Income Statement* | | *Page 9: ARCP Net Income Used for FFO/AFFO* | |
|---|---|---|---|
| Net loss | (320,655) | | March 31, 2014 |
| Net loss attributable to non-controlling interests | 11,974 | Total Company: | |
| Net loss attributable to the Company | (308,681) | Net loss attributable to the Company | $ (332,313) |
| Less: Dividends attributable to preferred shares | (22,427) | | |
| Less: Dividends attributable to participating securities | (1,205) | | |
| Net loss attributable to common stockholders | $ (332,313) | | |

Ex. B at 8-9.

Second, it was also apparent from ARCP's Q1 2014 Form 8-K's AFFO table that addbacks used to adjust AFFO included non-controlling interests, and therefore reflected so-called "gross" figures.  A comparison of the addbacks to the corresponding expenses on ARCP's income statement on the preceding page of the 8-K demonstrated that the full, "gross" amounts were used when calculating AFFO addbacks. *Id.*

| *Page 8: ARCP Income Statement* | | *Page 9: ARCP FFO/AFFO Addbacks* | |
|---|---|---|---|
| | | | March 31, 2014 |
| Acquisition related | 11,884 | Total Company: | |
| Merger and other transaction related | 222,192 | Net loss attributable to the Company | $ (332,313) |
| Property operating | 29,627 | (Gain) loss on disposition of properties | (2,979) |
| General and administrative | 26,839 | Depreciation and amortization of real estate assets | 150,899 |
| Equity based compensation | 22,510 | Depreciation and amortization of real estate assets in unconsolidated joint ventures | 602 |
| Depreciation and amortization | 165,363 | FFO - Total Company | (183,791) |
| Total operating expenses | 512,851 | Acquisition related | 11,884 |
| Operating loss | (192,237) | Merger and other transaction related | 222,192 |
| Other (expense) income: | | | |
| Interest expense, net | (116,712) | | |
| Other income, net | 5,512 | | |
| Loss on contingent value rights | — | | |
| Loss on derivative instruments, net | (20,197) | | |
| Gain on disposition of properties, net | 2,979 | | |

Finally, ARCP disclosed that the share count used to calculate AFFO per share excluded the approximately 3% of shares attributable to the non-controlling interests and therefore reflected a "net" figure.  ARCP's Q1 2014 Form 8-K disclosed that it used a share count of 573,728,248 to calculate its AFFO per share. *Id.* at 9.  On May 21, 2014, ARCP issued an Updated Form 8-K[9] that made explicit that the 573,728,248 figure did not include non-controlling interests, referred to as OP (operating partnership) Units in the filing.

---

[9]    American Realty Capital Properties, Inc., Current Report (Form 8-K), Exhibit 99.1 (May 21, 2014) ("Updated Form 8-K").  This filing is attached hereto as Exhibit C.

| 1Q14 Weighted Average Fully Diluted Shares | 573,728 |
| Plus: Cole Impact from 1/1/14 - 2/6/14 | 215,438 |
| Shares per 12/31/13 Pro Forma 8-k | 789,166 |
| Plus: Impact of Weighted Average Issuance | 3,154 |
| Total Shares Outstanding at 3/31/14 | 792,320 |
| OP Units | 24,836 |
| Total Shares & Units Outstanding at 3/31/14 | 817,156 |

Ex. C at 1.

Thus, in May 2014, it was clear from the face of ARCP's reported results that ARCP

calculated its Q1 2014 AFFO per share with: (1) a net loss that excluded non-controlling

interests and was therefore "net"; (2) various addbacks that included non-controlling interests

and were therefore "gross"; and (3) a share count that excluded non-controlling interests and was

therefore "net." This treatment was consistent with ARCP's AFFO per share reporting in each

quarter starting in Q4 2012.[10]

### 4.    ARCP's Q2 2014 Financial Reporting

The Indictment alleges that Mr. Block was advised of a methodological "error" in

ARCP's AFFO per share calculation "shortly before" the filing of the Q1 2014 Form 10-Q. Ind.

¶ 15. The Indictment further alleges that, following the filing, Mr. Block was advised that this

"error" resulted in an overstatement of approximately $0.03 per share in ARCP's AFFO per

share calculation for Q1 2014. *Id.* The sole basis for the alleged "error" was that ARCP had

used a combination of "net" and "gross" figures to calculate its AFFO per share. *Id.* The

Government maintains, without support, that it is *per se* improper to mix net and gross figures in

---

[10]    *See, e.g.*, American Capital Realty Properties, Inc., Current Report (Form 8-K), Exhibit 99.2 (February 28, 2013) at 10. This filing is attached hereto as Exhibit D.

9

this manner. *Id.* ¶ 12. That is not so. As set forth above, there is no set guidance on calculating AFFO and other REITs have combined net and gross figures in their AFFO reporting.[11]

In any event, ARCP elected to present its Q2 2014 AFFO numbers in a different format than in Q1 2014 and prior quarters – by including non-controlling interests in the net loss, addbacks, and share count used to calculate AFFO per share. Ind. ¶ 19. On July 29, 2014, ARCP issued its Q2 2014 Form 10-Q[12], disclosing AFFO figures for Q2 2014 and the first six months of 2014, and again cautioning the market about the limitations of relying on AFFO given that it is a non-GAAP metric in which REITs, such as ARCP, are given considerable discretion in determining what to include or exclude. Ex. F at 71-74. The same day, ARCP published its Q2 2014 Form 8-K[13] showing an AFFO per share of $0.24 for Q2 2014 and $0.49 for YTD. Ex. G at 9.

ARCP's changed AFFO methodology was plain on the face of its filings. The Q2 2014 Form 8-K's income statement made clear that, unlike in Q1 2014, the Q2 net income used in calculating AFFO included non-controlling interests and was therefore "gross." *Id.* at 8-9.

---

[11]     *See, e.g.*, Washington Real Estate Investment Trust Quarterly Report (Form 10-Q) (July 24, 2014) at 4, 7 (adding back $24,401,000 in depreciation and amortization costs and $1,933,000 in acquisition costs, which include NCI, to "[n]et income attributable to the controlling interests," which excludes NCI) (attached hereto as Exhibit E).

[12]     American Realty Capital Properties, Inc., Quarterly Report (Form 10-Q) (July 29, 2014) ("Q2 2014 Form 10-Q"). This filing is attached hereto as Exhibit F.

[13]     American Capital Realty Properties, Inc., Current Report (Form 8-K), Exhibit 99.2 (July 29, 2013) ("Q2 2014 Form 8-K").. This filing is attached hereto as Exhibit G.

| Page 8: ARCP Income Statement | | Page 9: ARCP Net Income Used for FFO/AFFO | | |
|---|---|---|---|---|
| | | | | Three Months Ended June 30, 2014 |
| Net loss | (43,265) | | | |
| Net loss attributable to non-controlling interests | 2,937 | Total Company: | | |
| Net loss attributable to the Company | (40,328) | | | |
| Less: Dividends attributable to preferred shares | 22,016 | Net loss (in accordance with U.S. GAAP) | $ | (43,265) |
| | | Dividends on Series F Preferred Stock | | (17,773) |
| Less: Dividends attributable to participating securities | 1,075 | Adjusted net loss | | (61,038) |
| Net loss attributable to common stockholders | $ (63,419) | | | |

Similarly, as in Q1 2014, the addbacks used to calculate AFFO did not exclude non-controlling interests, which is evident from the fact that they matched the figures on the income statement, and were therefore also "gross." *Id.*

| Page 8: ARCP Income Statement | | Page 9: ARCP FFO/AFFO Addbacks | | |
|---|---|---|---|---|
| | | | | Three Months Ended June 30, 2014 |
| Acquisition related | 8,453 | | | |
| Merger and other transaction related | 13,286 | Total Company: | | |
| Property operating | 39,372 | | | |
| General and administrative | 19,063 | Net loss (in accordance with U.S. GAAP) | $ | (43,265) |
| Equity based compensation | 9,338 | Dividends on Series F Preferred Stock | | (17,773) |
| Depreciation and amortization | 258,993 | Adjusted net loss | | (61,038) |
| Total operating expenses | 355,573 | Gain on disposition of properties | | (1,510) |
| Operating income (loss) | 26,408 | Depreciation and amortization of real estate assets | | 234,089 |
| Other (expense) income: | | Depreciation and amortization of real estate assets in unconsolidated joint ventures | | 3,120 |
| Interest expense, net | (99,635) | FFO - Total Company | | 174,661 |
| Other income, net | 6,526 | Acquisition related | | 8,453 |
| Loss on contingent value rights | — | Merger and other transaction related | | 13,286 |
| Gain (loss) on derivative instruments, net | 21,926 | | | |
| Gain on disposition of properties, net | 1,510 | | | |

Further, comparing the YTD and the Q2 2014 AFFO numbers, it was evident that ARCP's methodology was changed. For example, comparing the net loss used for the AFFO calculation in Q2 2014 to the net loss in the YTD would imply a Q1 "net loss" of $320,655 when the previously reported Q1 2014 "net loss" was $332,313. That difference is clear from a side-by-side comparison.

Notwithstanding the facts that AFFO is self-defined and that ARCP's financial statements made its AFFO calculation method apparent throughout the relevant time period, the Indictment alleges that the change in methods in Q2 2014 produced a shortfall that would expose

11

that AFFO in Q1 2014 was falsely inflated and leave ARCP short of its full-year guidance of $1.13 to $1.19 AFFO per share. Ind. ¶¶ 19, 25. The Indictment alleges that, as a result, Mr. Block and others used certain unspecified figures "without justification" in their calculations for Q2 2014 that were incorporated into ARCP's Q2 2014 Form 10-Q and allowed ARCP to report a YTD AFFO per share that was consistent with the full-year guidance (despite the fact that even the allegedly inflated YTD AFFO calculation fell significantly below half of full-year guidance). *Id.*

Specifically, the Indictment alleges that: (1) AFFO was fraudulently inflated for Q2 2014 to $205.278 million and, using fraudulently inflated figures from Q1 2014, YTD AFFO was inflated by $13 million to $353.058 million; and (2) AFFO per share was overstated by $0.03, or 5% of total share, based on a reporting of $0.26 AFFO per share in Q1 2014 and $0.24 AFFO per share in Q2 2014. *Id.* ¶¶ 15, 22, 24-25.

The evidence will show that ARCP's Q2 2014 AFFO calculation was accurate and reported in good faith. And, even accepting that YTD AFFO was inflated by $13 million, the Government's calculation of a 5% overstatement is itself overstated. The correct number would be approximately 3.8% – well below the materiality threshold set forth in S.E.C. guidance for GAAP measurements (let alone the non-GAAP measurement at issue here).

B.    Procedural Background

On September 7, 2016, the Government filed a six-count indictment, with each count premised on ARCP's Q2 2014 financials allegedly being materially false and misleading.

Count 1 charges a conspiracy to commit securities fraud, to make false filings with the S.E.C., and to falsify business records. *Id.* ¶¶ 1-30. It alleges that, beginning in July 2014, Mr. Block and others engaged in a scheme to defraud by falsely inflating the value of AFFO and AFFO per share for Q2 2014 and YTD 2014. *Id.*

12

Count 2 charges securities fraud. It alleges that Mr. Block engaged in a scheme with others to mislead the shareholders of ARCP by fraudulently inflating the reported figures for AFFO and AFFO per share for Q2 2014 and Q2 YTD 2014, as reported in the Q2 2014 Form 10-Q and Q2 2014 Form 8-K. *Id.* ¶¶ 31-32.

Counts 3 and 4 charge false statements in filings with the S.E.C. Specifically, Count 3 alleges that Mr. Block willfully and knowingly made and caused to be made materially false and misleading statements in the Q2 2014 Form 10-Q. *Id.* ¶¶ 33-34. Count 4 alleges that Mr. Block willfully and knowingly caused the submission of an 8-K press release that was materially false and misleading, in connection with the Q2 2014 Form 10-Q. *Id.* ¶¶ 35-36.

Count 5 charges false certification of disclosure filed with the S.E.C. It claims that Mr. Block falsely certified that he had disclosed to ARCP's auditor and the audit committee any fraud, whether or not material, that involved management or other employees who had a significant role in ARCP's internal control over financial reporting. *Id.* ¶¶ 37-38.

Count 6 charges false section 1350 certification filed with the S.E.C. In essence, it claims that Mr. Block knowingly and willfully certified that the Q2 2014 Form 10-Q was accurate when he knew it included fraudulent inflated AFFO figures for Q2 2014 and YTD 2014. *Id.* ¶¶ 39-40.

### III.   STANDARD

#### A.   Motions to Dismiss

Rule 12(b) of the Federal Rules of Criminal Procedure permits pre-trial motions on "any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). On such a motion, "the facts alleged by the government must be taken as true" and courts may not test the sufficiency of the evidence. *United States v. Alyenikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010).

13

Courts may, however, assess the sufficiency of the allegations to determine whether they state an offense. First, at a minimum, an indictment must allege the elements of the offense charged. *United States v. Capoccia*, 503 F.3d 103, 113 (2d Cir. 2007). And, to the extent an offense "includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as the definition." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). Rather, "it must state the specifics" and "descend to particulars." *Id.*; *see Russell v. United States*, 369 U.S. 749, 765 (1962). Such factual particulars are required so that the Court may evaluate whether the facts, if proven, constitute an offense. *United States v. Hess*, 124 U.S. 486, 4888 (1888). "Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute." *Aleynikov*, 737 F. Supp. 2d at 176.

B.      Motion to Strike

A motion to strike surplusage from an indictment is appropriate when the challenged phrases are not relevant to the offense charged and are inflammatory and prejudicial. *United States v. Ferguson*, 676 F.3d 260, 290 n.34 (2d Cir. 2011).

IV.     **ARGUMENT**

As detailed below, each Count of the Indictment must be dismissed. In the alternative, portions of the Indictment should be stricken.

A.      The Unprecedented Indictment Violates Due Process.

The Supreme Court has recognized that due process requires that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed" or which is "so standardless that it invites arbitrary enforcement." *United States v. Lanier*, 520 U.S. 259, 265 (1997); *Johnson v. United States*, 135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569 (2015).

14

This means that: (1) a statute cannot be "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application"; (2) ambiguities in a criminal statute must be resolved so "as to apply it only to conduct clearly covered"; and (3) courts may not apply a "novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 U.S. at 266. In all cases, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267.

Here, the Indictment violates Mr. Block's due process rights as applied to the unique facts present here. These include: (1) the apparent first-ever application of criminal securities laws to a non-GAAP measurement; (2) the lack of meaningful guidance or standards with respect to AFFO reporting, including from NAREIT[14] which recognizes that there is not even "consensus among preparers and users of" AFFO "to allow agreement on a single definition"; and (3) the claim that an alleged 5% overstatement (3.8% with correct math) of a non-GAAP measurement for a quarter is material, particularly in the context of a company that only provided annual AFFO guidance and with the size, earnings, and growth ARCP was reporting in the relevant time period.

Under these circumstances, dismissal of the Indictment is warranted.

---

[14] White Paper on Funds From Operations, NAREIT (April 2002), at 6, https://www.reit.com/sites/default/files/media/Portals/0/Files/Nareit/htdocs/policy/accounting/2002_FFO_White_Paper.pdf.

B.    The Indictment Fails to Adequately Allege that ARCP's Q2 2014 AFFO Reporting Was Materially False and Misleading.

Each of the charges in the Indictment is premised on the Q2 2014 AFFO reporting being materially false and misleading.[15]  The Government's allegations are insufficient to support these claims.

1.    ARCP's Q1 2014 AFFO Reporting, Which the Government Asserts Flowed Into Q2 2014 Reporting, Was Neither False Nor Misleading.

The Indictment charges that ARCP's Q2 2014 AFFO reporting was inaccurate because Q1 2014 AFFO per share allegedly was inflated by \$0.03, and that inflation was carried forward into Q2 2014's YTD reporting.  This charging theory fails because Q1 2014 AFFO was not improper or inconsistent with any accounting requirements.

Despite the Government's allegations, there is no accounting principle that disallows use of a combination of the so-called "net" and "gross" methods for calculating AFFO.  Courts and commentators agree that "there is no 'right' formula" for "non-GAAP" metrics like AFFO even in the civil context. *Ironworkers Local 580 v. Linn Energy, LLC,* 29 F. Supp. 3d 400, 426 (S.D.N.Y. 2014); *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cty. Ret. Ass'n v. MDC Partners, Inc.,* No. 15 CIV. 6034 (RJS), 2016 WL 5794774, at *12 (S.D.N.Y. Sept. 30, 2016) (reaching same conclusion); *See* Real Estate Investment Trusts Handbook § 3:37 (2015 ed.) at 6 (AFFO "Consensus Has Become Meaningless in Many Cases" due to the "Lack of Standardization" in calculating AFFO).  Consequently, non-GAAP metrics can be calculated as the company chooses, so long as there is appropriate disclosure.

---

[15]    *See* 18 U.S.C. § 1001 (falsity and materiality elements for charge of false filings with the S.E.C.); 18 U.S.C. § 1350 (falsity element for charge of false certification, in connection with S.E.C. filing, that filing reflects in all "material respects, the financial condition and results of operation of the issuer"); 15 U.S.C. § 78k(b); 17 C.F.R. § 240.10b-5 (falsity and materiality elements for charge of securities fraud).

16

*Ironworkers*, 29 F. Supp. 2d at 426; *N. Collier*, 2016 WL 5794774, at *12. Two recent Southern District of New York decisions are illustrative.

In *N. Collier Fire Control & Rescue District Firefighter Pension Plan & Plymouth County Retirement Association v. MDC Partners, Inc.*, Judge Sullivan rejected the plaintiffs' argument that they had been misled by a "nonstandard" calculation of the financial metric of Earnings Before Interest Tax Depreciation and Amortization ("EBITDA"). 2016 WL 5794774, at *12. Judge Sullivan reasoned that "EBITDA is a non-GAAP metric for which there is no right formula because, unlike GAAP metrics, they have no uniform definition. The fact that a plaintiff may take issue with the way a company chooses to calculate these metrics is of no moment . . . ." *Id.* (citations and quotations omitted).

Similarly, in *Ironworkers Local 580 v. Linn Energy, LLC*, Judge McMahon considered whether a self-defined, non-GAAP measure that lacked an industry consensus definition could be falsely reported if the reporting company's method for calculating the figure was disclosed. 29 F. Supp. 3d at 426. The court concluded that the company could not be held to a standard of using a "proper" calculation method if no such method existed. *Id.* at 427 ("[The] argument about the 'proper' method of calculating [the non-GAAP measure] makes little sense where, as here, there is no recognized 'proper' method of making such a calculation."). The court reasoned that, while the securities laws protect investors from false information, they do not protect investors from the "flawed business decision[]" of using a less preferable calculation method. *Id.* at 428.

The use of a purportedly less preferable AFFO calculation by ARCP in Q1 2014 cannot support criminal charges. Indeed, civil securities law claims challenging non-GAAP metrics that have no uniform definition have been consistently rejected. Securities claims are even more

17

inappropriate where, as here, the method of calculation was clear on the face of the challenged reporting. *In re Apple REITS Litig.*, No. 11-CV-2919, 2013 WL 1386202, at *12 (E.D.N.Y. Apr. 3, 2013) (aff'd in pertinent part *sub nom Berger v. Apple REIT Ten, Inc.*, 563 F. App'x 81, 84 (2d Cir. 2014)); *N. Collier*, 2016 WL 5794774, at *12.

2.      Any Other Supposed Misstatement Was Immaterial.

The Indictment alleges without detail that Q2 YTD 2014 AFFO was overstated by $13 million. According to the Government, this represented a supposed inflation of $0.03 AFFO per share, or allegedly 5% of total AFFO per share in the Indictment's Q2 YTD 2014 numbers. The $0.03 and 5% figures cited by the Government are overstated and, in any event, the supposed inflation is immaterial.

First, based on the Government's allegations, both the $0.03 and 5% figures cited in the Indictment are overstated. The $0.03 quoted by the Government appears to be based on the notion that investors would add the $0.26 AFFO per share reported in Q1 to the $0.24 reported in Q2 to calculate the YTD AFFO per share for 2014. Ind. ¶ 25 ("By reporting AFFO per share of $0.24 in the second quarter, after having reported AFFO per share of $0.26 in the first quarter . . ."). But this ignores the facts that:

- ARCP in Q2 2014 reported a YTD AFFO figure of $0.49, not the $0.50 that would result from simply adding the two figures cited by the Government.

- Applying the correct math, the alleged inflation is approximately 1.8 cents and 3.8% per share, not the 3 cents and 5% per share claimed by the Government. This is because: (1) dividing reported AFFO by the reported share count yields an AFFO per share of $0.48892; and (2) subtracting $13 million from the reported Q2 2014 YTD AFFO and dividing by the reported share count, yields an AFFO per share of $0.47092.

- ARCP's AFFO reporting came in the context of annual guidance. The Government's calculations, however, are premised solely on ARCP's interim financial results. Looking at ARCP's reported AFFO in the context of ARCP's annual guidance of $1.13 to $1.19 AFFO per share, the alleged misstatements are

18

smaller still as: (1) the 3 cent overstatement alleged by the Government represents just 2.52% to 2.65% of full-year guidance; and (2) the 1.8 cent overstatement that results from using the Government's $13 million figure represents just 1.51% to 1.59 % of full-year guidance.

Second, even if the Government's figures were correct, any purported computational error was immaterial.

Under the S.E.C.'s Staff Accounting Bulletin No. 99 ("SAB 99"), which courts in this Circuit consider to be persuasive guidance in assessing materiality, courts first look to quantitative factors. *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 163 (2d Cir. 2000) (adopting SAB 99's framework as persuasive guidance for establishing materiality in the Second Circuit); S.E.C. Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150, 45151 (Aug. 19, 1999). In the GAAP financials context, this is whether the alleged misstatement exceeds five percent. SAB 99, 64 Fed. Reg. at 45151 n.2 (setting a quantitative floor of 5% for a misstatement or omission, which is defined as "a financial statement assertion that would not be in conformity with GAAP."). Courts then consider qualitative factors. *Id.* at 45151-52

Neither standard is met here. Properly calculated, the supposed misstatement was well below the five percent applicable to GAAP measurements, let alone the non-GAAP measurement at issue here. And, even under the Government's calculation, the alleged misstatement did not exceed five percent. This merits dismissal. *ECA v. JPMorgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009) (applying SAB 99's 5% materiality threshold to grant motion to dismiss) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997) (affirming district court's conclusion that a 2% overstatement was immaterial as matter of law)).

Qualitative factors applicable under SAB 99 also weigh heavily in favor of the conclusion that any alleged misstatement here was immaterial. This is so for a number of reasons:

19

- A $0.03 per share or $13 million difference in AFFO is immaterial in the context of a $20 billion company like ARCP. $13 million represents just 0.065% of ARCP's value.

- ARCP's YTD AFFO was reported as a reference point for, and must be considered in the context of, ARCP's full-year guidance. Any overstatement was even smaller in the context of ARCP's annual guidance. Moreover, the Government provides no basis for concluding that the alleged overstatement, in fact, was material to ARCP being on track to meeting its guidance.

- AFFO is an undefined, non-standard, and non-GAAP measure.

- The methodology for calculating AFFO varies greatly among different REITs, analysts, and other market participants.

- ARCP's reporting made clear that these measures were less relevant than GAAP metrics and were provided for additional context.

- The market had the information necessary to understand the utility of ARCP's AFFO metrics. ARCP disclosed each of the line-items and underlying figures that comprised AFFO, none of which the Government specifically takes issue with in the Indictment. The market could therefore assess for itself the significance of each line-item that formed the bases for these figures.

- It was also apparent on the face of the company's financial reporting that gross figures were used to calculate AFFO for Q2 2014.

- The alleged misstatement is not alleged to have masked a change in earnings or other trends. In fact, AFFO increased as compared to both the prior quarter and the same quarter prior year, with or without the alleged overstatement.[16]

- The alleged misstatement is not alleged to have changed a loss into a gain or vice versa.

- The alleged overstatement is not alleged to have affected compliance with any: (1) regulatory requirements, as there are no prescriptive regulatory requirements for AFFO calculations; or (2) contractual requirements.

At bottom, the Government has only offered a bare conclusory allegation of materiality.

This is not enough. *See, e.g., S.E.C. v. Cohen*, No. 4:05 Civ. 371, 2007 WL 1192438, at *15

---

[16]    Ex. G at 6.

(E.D.N.Y. Apr. 19, 2007) (rejecting materiality allegations based solely on blanket assertion that misstatement was material without any additional evidence).

     C.      Portions of the Indictment Should Be Stricken.

If the Indictment is not dismissed, portions of the Indictment should be stricken as surplusage under Federal Rule of Criminal Procedure 7(d).

First, paragraphs 12, 15, 16, 17, 18, and 19 should be stricken in part. They are irrelevant and prejudicial because they suggest, without basis, that there were only two "permissible methods" to calculate AFFO and therefore ARCP's Q1 2014 AFFO calculation was incorrect. They should be stricken to the extent they so allege.

Second, paragraph 25 should be stricken in its entirety. This paragraph contains statements that are highly prejudicial and, because they are misstatements of fact, have no relevance to the case. Paragraph 25 relies on erroneous AFFO calculations of inflation of $0.03 and 5% per share YTD, in an apparent effort to reach the S.E.C.'s quantitative materiality floor of five percent for GAAP financials. In addition, paragraph 25 misleadingly implies that YTD AFFO per share for Q2 was $0.50, by suggesting that the market would simply combine the Q1 AFFO per share ($0.26) with the Q2 AFFO per share ($0.24) when the YTD AFFO per share was plainly reported as $0.49.

For these reasons, these portions of the Indictment should be stricken. *Ferguson*, 676 F.3d at 290 n.34 (striking allegations is appropriate where they are irrelevant and inflammatory).

21

## V.    CONCLUSION

For the reasons set forth above, the Court should dismiss the Indictment.  If it is not dismissed: (1) paragraphs 12, 15, 16, 17, 18, 19 of the Indictment should be stricken of the allegation that there was only one proper method of calculating AFFO and that ARCP's Q1 2014 AFFO calculation was erroneous; and (2) paragraph 25 should be stricken in whole.

Respectfully submitted,

/s/ Reid H. Weingarten
Reid H. Weingarten
Michael C. Miller
Michelle L. Levin
Michael G. Scavelli
Jeffrey A. Novack
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Brian S. Block*

Dated:  February 28, 2017