UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES

-v-

BRIAN BLOCK,

                Defendant.

16-CR-595 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Defendant Brian Block is charged in a six-count indictment with offenses relating to his allegedly fraudulent preparation of financial statements for American Realty Capital Properties ("ARCP"), a real estate investment trust ("REIT") for which he served as Chief Financial Officer ("CFO"). (Dkt. No. 1 ("Indictment").) Before the Court are two pre-trial motions filed by Block, the first seeking to dismiss the indictment in its entirety or in the alternative to strike portions of it, and the second seeking a bill of particulars. The Court heard oral argument on the motions on April 19, 2017. For the reasons that follow, the motions are denied.

**I.    Background**

      Block served as CFO of ARCP, which is a publicly traded REIT with a portfolio invested primarily in commercial real estate. (Indictment ¶¶ 1-5.) ARCP, as is common among REITs, did not own the real estate directly; rather, the real estate was held by a subsidiary operating partnership (the "OP"), and ARCP owned 97% of the OP's common stock, while the remaining 3% was held by outside shareholders with non-controlling interests. (Indictment ¶ 11.)

      ARCP's quarterly financial disclosures included—among other information—two financial metrics, Funds From Operations ("FFO") and Adjusted Funds From Operations ("AFFO"), neither of which is defined by GAAP but both of which are common metrics in the real estate industry. FFO is calculated based on net income, with adjustments for gains or losses

1

from sales of property, depreciation and amortization, and unconsolidated partnerships and joint ventures. (Dkt. No. 28 at 5.) AFFO further adjusts FFO to account for one-time expenses, though its calculation methodology is less consistently defined. (*Id.* at 6.)

Block served as CFO of ARCP in the first and second quarters of 2014. (Indictment ¶ 10.) The Indictment alleges that he participated in a fraudulent scheme to falsely inflate AFFO and AFFO per share in in ARCP's public filings for the second quarter of 2014 ("Q2 2014") and the first half of 2014 ("YTD 2014"). (*Id.*) The Indictment claims that Block inflated these figures so that they would be consistent with ARCP's AFFO guidance and to conceal errors made in the first quarter of 2014 ("Q1 2014"). (*Id.*) The impact of the misstatement on YTD 2014 AFFO was approximately $13 million, and on YTD 2014 AFFO per share was approximately $0.03, or 5% of total AFFO per share. (*Id.* ¶ 11.)

The Indictment, which was unsealed on September 8, 2016, charges Block with six counts. (*Id.* ¶¶ 26-40.) Count One charges Block with conspiracy to commit securities fraud to make false filings with the SEC and to falsify the books and records of ARCP. Count Two charges Block with securities fraud. Counts Three and Four charge Block with making false statements in filings with the SEC. Count Five charges Block with filing a false certification with the SEC. And Count Six charges Block with filing a false certification with the SEC.

Block moves to dismiss all counts against him or, in the alternative, to strike portions of the Indictment. (Dkt. No. 27.) Block also moves for a bill of particulars. (Dkt. No. 23.)

## II. Discussion

The Court first considers Block's motion to dismiss and strike and next addresses his motion for a bill of particulars.

### A. Motion to Dismiss and Strike

Block argues that the Indictment should be dismissed because it violates due process and because it fails to adequately allege that his misstatements were materially false or misleading. In the alternative, he argues that portions of the indictment should be stricken.

#### 1. Motion to Dismiss

On a motion to dismiss under Federal Rule of Criminal Procedure 12(b), the Court accepts the allegations in the indictment as true and may not consider the sufficiency of the evidence. *United States v. Alyenikov*, 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010) (citing *United States v. Velastegui*, 199 F.3d 590, 592 n. 2 (2d Cir.1999); *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009)).

Rule 7(c) provides that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). It is well established that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)). "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *Id.* (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)).

As a threshold matter, the Indictment against Block easily clears this relatively low bar. First, it provides an extensive description of the alleged accounting fraud scheme, including a description of ARCP's use of AFFO and the Q2 2014 filings. (Indictment ¶¶ 1-25.) It then describes the statutory requirements for each of the counts alleged, explaining how Block's

conduct fits the alleged crimes. (*Id.* ¶¶ 26-40.) The Indictment is clear and specific throughout; it charges the Block's crime with sufficient precision "so that he could defend against those allegations in the instant prosecution and in any future prosecutions." *Yannotti*, 541 F.3d at 127.

Block first argues that the Indictment should be dismissed because it violates due process. Focusing on the "unprecedented" nature of this Indictment (Dkt. No. 33 at 4), Block makes three arguments: (1) that this is the first-ever application of criminal securities laws to misstatement of a non-GAAP financial metric; (2) that there is no meaningful guidance or standard for calculating AFFO; and (3) that the alleged misstatement was not material (Dkt. No. 28 at 15). However, Block's due process claim is unavailing.

First, the Government identifies several cases in this Circuit in which securities laws were applied to allegations of misstatement of non-GAAP financial metrics. *See, e.g.*, *United States v. Rigas*, 490 F.3d 208, 227 (2d Cir. 2007); *United States v. Sullivan*, No. 102 Cr. 1144, 2004 WL 253316, at *2-*5 (S.D.N.Y. Feb. 10, 2004); *see also, e.g.*, *S.E.C. v. DiMaria*, No. 15 Civ. 7035, 2016 WL 4926200, at *7 (S.D.N.Y. Sept. 15, 2016) (denying a motion to dismiss an S.E.C. enforcement action based in part on misstatements of Adjusted EBITDA and Adjusted EPS). Block attempts to distinguish these cases from his on the grounds that they involved larger-scale frauds and because they involve EBITDA, a more established financial metric than AFFO that includes components that are, in fact, subject to GAAP. However, these arguments go more to materiality—which the Court addresses below—than to the more basic question of whether criminal prosecution on the basis of a misstatement of non-GAAP financial metrics violates due process.

And while it is true, as Block notes, that no criminal case—or at least no case the parties have identified—has been based *solely* on non-GAAP financial metrics and no case has been based on AFFO specifically, these distinctions are insufficient to justify dismissal. The statutory

4

language under which Block is charged makes no distinction between GAAP and non-GAAP financial metrics and does not exclude AFFO from its ambit—it simply criminalizes willful misstatements of material fact. *See, e.g.*, 17 CFR § 240.10b-5 ("It shall be unlawful . . . (b) To make *any untrue statement of a material fact* or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . ." (emphasis added)). As discussed below, Block disputes the materiality of his misstatement of AFFO, but assuming that the misstatement is material, a misstatement of AFFO (even though it is a non-GAAP metric) is sufficient to trigger a violation under the statute's plain language.

As for Block's argument that the absence of standards or guidance for calculating AFFO renders the Indictment a violation of his due process rights, this argument is beside the point. The Indictment makes clear that the Government is not challenging the method Block used to calculate AFFO, but rather the inputs he used in that calculation—the Government claims that the *inputs* on their own fraudulently inflated the ultimate output. The Indictment clearly explains that Block and others "inserted into a spreadsheet" that was "us[ed] to calculate AFFO . . . figures that fraudulently inflated the AFFO and AFFO per share calculations that were to be included in the Second Quarter 10-Q and the related press release." (Indictment ¶ 19.) Block had fair notice that using willfully inflated figures as inputs to calculate materially misstated metrics that would be included in ARCP's financial statements—by whatever formula they are calculated—constituted criminal conduct.

Finally, Block claims that his due process rights were violated because he could not have known that the alleged misstatements were material, and as such, he was not on notice that his conduct might be criminal. (Dkt. No. 33 at 9.) But given the Court's conclusion below that

5

materiality has been adequately alleged, there is sufficient support for a conclusion that Block had fair notice that such misstatements might be material at the time he made them.

At bottom, the "touchstone" of the due process analysis is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997). At the time Block made the alleged misstatement, it was reasonably clear that a willful, material misstatement of AFFO in ARCP's financial statements could expose him to criminal liability.

Block next argues that the indictment should be dismissed because it fails to adequately allege that ARCP's Q2 2014 AFFO reporting was materially false and misleading. (Dkt. No. 28 at 16-21.)

Block first claims that due to the absence of established methodology for AFFO calculations, his calculation was not improper. (*Id.* at 16-18.) To that end, he cites several cases from this District in which courts have found that alleged misstatements of self-defined non-GAAP metrics are not false and misleading. *See Ironworkers Local 580—Joint Funds v. Linn Energy, LLC*, 29 F. Supp. 3d 400 (S.D.N.Y. 2014); *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth City Ret. Ass'n v. MDC Partners, Inc.*, No. 15 Civ. 6034, 2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016). However, as discussed above, the Indictment charges that Block used unsupported and undisclosed adjustments as inputs in the calculation of Q2 2014 AFFO, and the use of those inputs was allegedly designed to mask a shortfall in Q1 2014 AFFO—the Indictment does not take issue with Block's AFFO methodology directly. (Dkt. No. 31 at 15.) Accordingly, the cases cited by Block are distinguishable, as they each involved *disclosed* adjustments to non-GAAP metrics, whereas here, the Indictment claims that the alleged misstatements were not adequately disclosed. *See Linn Energy*, 29 F. Supp. 3d at 426 ("It is not fraudulent for a reporting entity to calculate metrics that are not defined under GAAP

6

(like the ones at issue here), taking (or not taking) into account whatever factors the reporting entity thinks appropriate—*as long as the public is told exactly what the company is doing*." (emphasis added)); *MDC Partners*, 2016 WL 5794774, at *12 ("Unless Plaintiffs can show that MDC somehow misled investors about how it actually calculated EBITDA, which they have not, there can be no claim for fraud.").

Block next claims that any misstatement was immaterial as a matter of law. (Dkt. No. 28 at 18-21.)

Materiality—in the criminal context, as in the civil context—requires the Court to determine whether a fact is one "that a reasonable investor would have considered significant in making investment decisions." *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000); *see also Basic v. Levinson*, 485 U.S. 224, 231-32 (1988); *see generally United States v. Gleason*, 616 F.2d 2, 28 (2d Cir. 1979) (explaining that materiality is the same in the civil and criminal contexts). Given the "inherently fact-specific" nature of the inquiry, which has both "qualitative and quantitative" aspects, materiality is well suited for determination by a jury. *In re Ply Gem Holdings, Inc. Sec. Litig.*, No. 14 Civ. 3577, 2016 WL 5339541, at *2 (S.D.N.Y. Sept. 23, 2016) (citations omitted); *see also United States v. Litvak*, 808 F.3d 160, 175 (2d Cir. 2015).

The Second Circuit has endorsed the use of SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (1999) ("SAB No. 99"), "which provides that '[t]he use of a percentage as a numerical threshold, such as 5%, may provide the basis for a preliminary assumption' that a deviation less than that threshold is likely to be immaterial, but that smaller deviations may be material where other overriding factors are present." *In re Ply Gem*, 2016 WL 5339541, at *2 (alteration in original) (quoting *In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 150 (S.D.N.Y. 2015)). SAB No. 99 goes on to list qualitative factors that might lead to a conclusion that a quantitatively small misstatement is nonetheless material. *Id.*

7

At this stage, in order to dismiss the Indictment due to a failure to allege materiality, the Court would have to conclude that the alleged misstatements are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Litvak*, 808 F.3d at 175 (quoting *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 131 (2d Cir. 2011)).

Here the parties dispute whether the quantitative threshold for materiality set out by SAB No. 99 has been met. The Indictment claims that, "[w]ith regard to YTD 2014 specifically, the fraud resulted in an intended overstatement of AFFO by approximately $13 million and an overstatement of AFFO per share by approximately $0.03, or approximately 5% of total AFFO per share." (Indictment ¶ 25.) This 5% impact would be sufficient to satisfy SAB No. 99's numerical threshold. Block, however, claims that the actual impact is closer to 1.8 cents and 3.8% per share—less than the 5% threshold of SAB No. 99. (Dkt. No. 28 at 18.) At this stage the Court is obliged to take facts in the Indictment as true. *Alyenikov*, 737 F. Supp. 2d at 176. Accordingly, the Government's allegations in the Indictment satisfy the quantitative threshold for materiality, and any dispute about their calculation is an issue for trial.

In any event, the Government also describes qualitative factors that militate in favor of considering the AFFO misstatement to be material. First, the Government describes the significance of AFFO as a metric in the REIT industry and to ARCP in particular. The Indictment explains that ARCP provided guidance to the market on its anticipated AFFO, and that ARCP executive compensation was tied in part to AFFO performance, which was also included in press releases. (Indictment ¶¶ 8-9, 24.) Further, the Indictment alleges that the AFFO misstatement satisfies many of the qualitative factors listed in SAB No. 99 itself: notably, that the misstatement was designed to align with analyst expectations and mask AFFO

8

underperformance and may have the effect of increasing management compensation. (*Id.* ¶ 25.) *See* SAB No. 99, 64 Fed. Reg. at 45152.

Though not all of the qualitative factors militate in favor of considering the alleged misstatement to be material, considering the quantitative and qualitative factors together, the Court cannot at this stage conclude that the alleged misstatement was "so obviously unimportant" so as to justify deeming it immaterial as a matter of law. *See Litvak*, 808 F.3d at 175. Materiality here is a question for the jury.

Accordingly, Block's motion to dismiss is denied.

### 2. Motion to Strike

In the alternative, Block asks the Court to strike portions of the Indictment, namely, paragraph 25 in its entirety, and paragraphs 12, 15, 16, 17, 18, and 19 in part. (Dkt. No. 28 at 21.) He argues that these paragraphs are irrelevant and prejudicial because they suggest that there were only two permissible methods for calculating AFFO and because they miscalculate the magnitude of the misstatement's impact. (*Id.*)

Courts in this Circuit are loath to tinker with indictments. *See United States v. Kassir*, No. 04 Cr. 356, 2009 WL 995139, at *2 (S.D.N.Y. Apr. 9, 2009). "Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Mulder*, 273 F.3d 91, 100 (2d Cir. 2001) (quoting *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)). "If evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *Scarpa*, 913 F.2d at 1013 (alteration omitted). "Because this is an exacting standard, only rarely is alleged surplusage stricken from an indictment." *Kassir*, 2009 WL 995139, at *2 (internal quotations and citations omitted). Moreover, "[c]ourts

9

in this district routinely await presentation of the Government's evidence at trial before ruling on a motion to strike." *United States v. Mostafa*, 965 F. Supp. 2d 451, 467 (S.D.N.Y. 2013).

Accordingly, Block has not carried his high burden at this stage, so the Court denies his motion to strike without prejudice to renewal after the Government's presentation of evidence at trial.

The information in paragraph 25 of the Indictment, which relates to the Government's calculation of the magnitude of the misstatement, and the information in paragraphs 12, 15, 16, 17, 18, and 19, which relates to AFFO calculation methodology, is neither inflammatory nor prejudicial—the parties' dispute about the proper calculation of AFFO and the impact of the misstatement is, as discussed above, an issue for trial. Block's arguments in favor of striking the identified paragraphs seems to relate more to his belief that the information is inaccurate than that it is irrelevant, inflammatory, or prejudicial. As such, the Court declines to strike it at this juncture.

### B. Motion for a Bill of Particulars

Block also moves for a bill of particulars. (Dkt. No. 23.)

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927)). As such, a "bill of particulars is 'required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Dames*, 380 F. Supp. 2d 270, 273-74 (S.D.N.Y. 2005) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)).

Reviewing the Indictment, the Court concludes that Block is not entitled to a bill of particulars. The Indictment sufficiently advises Block of the nature of the charges against him—it describes with specificity the acts he allegedly committed, the nature of the conspiracy of which he is accused, and it explains (in language closely tracking that of the relevant statutes) the crimes alleged. This is sufficient.

Block first argues that he is entitled to particulars regarding the alleged "other" co-conspirators. (Dkt. No. 25 at 6-7.)

"There is no clear rule in the Second Circuit as to when a bill of particulars for unindicted co-conspirators should be granted." *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009), *aff'd sub nom. United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012). Accordingly, courts in this District both grant and deny such requests. *See, e.g.*, *United States v. Calvente*, No. 12 Cr. 732, 2013 WL 4038952, at *1 (S.D.N.Y. July 26, 2013) (denying a request for particulars); *United States v. Miller*, No. 12 Cr. 0368, 2012 WL 4791992, at *4 (S.D.N.Y. Oct. 9, 2012) (same). *But see, e.g.*, *Kahale*, 789 F. Supp. 2d at 372 (granting a request for particulars); *United States v. Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (same).

However, cases in which such a request is granted generally involve conspiracies with a large number of co-conspirators over a long period of time. *See Kahale*, 789 F. Supp. 2d at 372 (granting a request where there were "four indicted defendants and an unknown number of unindicted individuals" over a period of five years); *Nachamie*, 91 F. Supp. 2d at 573 (granting a request where there were eight defendants and an unknown number of unindicted co-conspirators over a period of more than three years); *see generally United States v. Chalmers*, 410 F. Supp. 2d 278, 286 (S.D.N.Y. 2006) (collecting cases).

Here, in contrast, the timeframe is relatively narrow—only a few months—and it focuses on Block's own conduct and interactions. Failure to disclose the identities of co-conspirators

11

therefore does not impair Block's ability to prepare his defense and does not leave him vulnerable to surprise at trial. Given that the standard for granting a bill of particulars is not whether it would be *helpful* to Block's defense but, rather, whether it is *necessary*, there is no need for particulars on this issue. *See Bortnovsky*, 820 F.2d 572, 574.

Block next argues that he is entitled to particulars regarding the alleged fraud. (Dkt. No. 25 at 7-9.) However, such requests are routinely denied. "[A]s a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly." *Kahale*, 789 F. Supp. 2d at 375 (quoting *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989)). Given that the Government here makes clear which of Block's statements are alleged to be fraudulent, and given the reasonable specificity of the Indictment, no further detail is required.

As a final matter, the parties dispute the relevance of the Government's discovery production to Block's request for a bill of particulars. Block argues that the Government has not satisfied its obligations because it has merely provided "mountains of documents" without providing clarity as to which statements Block must defend against. (Dkt. No. 25 at 9.) *See Bortnovsky*, 820 F.2d at 575. The Government, meanwhile, argues that its generous production is a reason to deny rather than grant the bill of particulars. (Dkt. No. 31 at 27-28.) The Government further contends that it provided a roadmap to its mountains of documents by giving Block a detailed index and spending time with defense counsel to ensure that the materials produced are easily accessible. (*Id.*)

In light of the clarity of the Indictment and the Government's representations about the nature of its discovery production, the mere fact that the production was voluminous is insufficient to justify a bill of particulars. "[E]videntiary detail is not the function of the bill of particulars"; rather, a bill of particulars is required only if the indictment is so general that it fails

12

to apprise a defendant of the specific acts of which he is accused. *United States v. Bonventre*, 646 F. App'x 73, 79 (2d Cir. 2016) (quoting *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)), *cert. denied*, 137 S. Ct. 676 (2017)).

**III.     Conclusion**

For the foregoing reasons, Block's motions are DENIED.

The Clerk of Court is directed to close the motions at Docket Number 23 and Docket Number 27.

SO ORDERED.

Dated: April 28, 2017
       New York, New York

_____
J. PAUL OETKEN
United States District Judge