UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                         :
UNITED STATES OF AMERICA                                 :
                                                         :
        v.                                               :
                                                         :  Case No. 16-cr-00595 (JPO)
BRIAN BLOCK,                                             :
                                                         :
        Defendant.                                       :
                                                         :
---------------------------------------------------------x


**DEFENDANT BRIAN S. BLOCK'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS MOTION *IN LIMINE* TO EXCLUDE
OR LIMIT THE TESTIMONY OF PROFESSOR ALLEN FERRELL**

 

Reid H. Weingarten
Michael C. Miller
Michelle L. Levin
Michael G. Scavelli
Jeffrey A. Novack
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Brian S. Block*

Dated: May 19, 2017

Defendant Brian S. Block respectfully submits this reply memorandum of law in further support of his motion *in limine* to exclude or limit the testimony of Professor Allen Ferrell, a proposed expert witness for the Government.

I. **INTRODUCTION**

Mr. Block's opening brief (the "Opening Brief") demonstrated that Professor Ferrell's proposed testimony on S.E.C. registration requirements and corporate governance and internal controls was improper.

With respect to S.E.C. registration requirements, the Opening Brief showed that this testimony was not helpful to the jury and would instead improperly usurp the Court's role because it would entail Professor Ferrell testifying on straightforward reporting requirements that will be the subject of the Court's instructions and are not in dispute.  The Government offers nothing to dispute the straightforward nature of the reporting requirements or the fact that it would duplicate the Court's own instructions.  This merits exclusion of the proposed testimony.

With respect to corporate governance and internal controls, the Opening Brief showed that Professor Ferrell was not qualified to testify on these topics and, in addition, the testimony was excludable under Rule 403 because it would invite improper comparison between ARCP's practices and those in the industry.  In response, the Government offers: (1) an insufficient appeal to Professor Ferrell's general bonafides; and (2) the non-responsive contention that prejudice would be avoided because Professor Ferrell would not himself make a comparison between ARCP practices and industry practices.  The Government has not met its burden to show the admissibility of this testimony.  It should be excluded.

Finally, the Opposition Brief identifies new topics of proposed testimony for the first time.  This testimony should be excluded because of the Government's late disclosure.  And,

even if it were timely, it is either unhelpful or excludable under Rule 403 for the reasons described below.

Accordingly, this Court should preclude Professor Ferrell from testifying.

## II. ARGUMENT

As detailed below, Professor Ferrell should be precluded from testifying about: (1) S.E.C. filing requirements for public companies; (2) internal financial controls and corporate governance at public companies; and (3) new topics of testimony identified in the Opposition Brief.

### A. Professor Ferrell's S.E.C. Reporting Requirement Testimony Should Be Excluded Because It is Not Helpful and Usurps the Court's Role.

The Opening Brief demonstrated that: (1) expert testimony is only admissible to the extent it is necessary and helpful to the jury and will not usurp the roles of the judge and jury; and (2) Professor Ferrell's proposed testimony on S.E.C. reporting requirements is not helpful to the jury and would instead improperly usurp the Court's role because it consists of instruction on straightforward reporting requirements that will be the subject of the Court's own instructions. (Opening Br. at 5-6.)

The Government does not dispute the applicable legal framework. Nor does it dispute that the S.E.C. filing requirements it intends to introduce are straightforward and subject to the Court's instructions.[1] In these circumstances, the proposed testimony is not helpful and will

---

[1] *See* Government's Requests to Charge, Docket No. 35, at 21 ("The SEC requires public companies to file quarterly reports, or Form 10-Qs, for each of the first three quarters of every fiscal year. The SEC also requires public companies to file a current report on a form called a Form 8-K for, among other reasons, any public announcement or release that discloses material non-public information regarding that company's results of operations or financial condition for a completed quarterly or annual fiscal period."); Defendant Brian S.

instead improperly usurp the Court's role.  *See United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991) (recognizing that expert testimony is improper where the "jury is capable of understanding and deciding without the expert's help.") (internal citation omitted).  That conclusion is buttressed by the fact that securities law experts were deemed unnecessary in several recent complex securities fraud cases.  *See, e.g.*, *United States v. Newman*, No. 12 Cr. 121; *United States v. Walters*, No. 16 Cr. 338; *United States v. Tomasetta*, No. 10 Cr. 1205 (three recent, complex securities fraud trials in the Southern District of New York where no securities law expert was called at trial).

    The cases cited by the Government are inapposite.[2]  (Opp. Br. at 5.)  In each, the courts dealt with complex regulatory regimes in which an expert's testimony would be helpful to the jury.  For example, in *S.E.C. v. U.S. Environmental, Inc.*, No. 94 Civ. 6608, 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002), the expert's testimony covered the intricacies of complex "wash trades," not the unnecessary background information the Government proposes.  *Id.* at *3.  Similarly, in *United States v. Dinero Express*, 57 F. App'x 456 (2d Cir. 2002), an FBI agent was allowed to testify regarding complex money laundering operations.  *Id.* at 460.  So too in *Highland Capital Mangement, L.P. v. Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008), where expert testimony aided the jury in understanding promissory notes that the court agreed were "a limited number of unusual instruments"—so obscure, in fact, that the court had to certify a question to the New York State Court of Appeals to determine if the notes were even securities

---

    Block's Proposed Final Jury Instructions, Docket No. 49, at 38 (proposing an identical instruction).

[2]     If anything, these cases support Defendant's proposed experts who will testify to the complex accounting environment that is highly relevant to the case.

at all. *Id.* at 180-82. Finally, in *S.E.C. v. Daifotis*, No. 11-00137, 2012 WL 2051193, at *3 (N.D. Cal. Jun. 7, 2012), the expert offered specific testimony regarding the public disclosures required for ultra-short bond funds. *Id.* at *3. In all of these cases, experts offered testimony about specific and complex financial transactions rather than the general securities background testimony the Government proposes to use in the present case.

For these reasons, this testimony should be excluded.

  B. Testimony as to Internal Financial Controls and Corporate Governance at Public Companies Should Also Be Excluded.

Professor's Ferrell's proposed controls and governance testimony should also be excluded.

First, the Opening Brief demonstrated the Professor Ferrell lacked any relevant experience that would qualify him to opine on internal financial controls and corporate governance at public companies. (Opening Br. at 7.) The Opening Brief showed, and the Government does not dispute, that Professor Ferrell: (1) has no industry experience, let alone experience specific to REITs; and (2) his academic experience and prior expert work is focused on analyzing stock drops. In response, the Government points to Professor Ferrell's association with the European Corporate Governance Institute, status as a fellow at Columbia University's "Program on Law and Economics of Capital Markets," and general background as a securities law professor. (Opp. Br. at 7.) But: (1) beyond being unclear what Professor Ferrell's association with the European Corporate Governance Institute entails, European corporate governance is simply not at issue here; and (2) the remaining qualifications do not show any experience or specialized knowledge, as required, in internal financial controls and corporate governance. *See S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013). Moreover, even if

Professor Ferrell had general expertise in these fields, there is nothing to suggest that he has any experience in the REIT industry, let alone expertise in the internal controls and corporate governance relevant to REITs.

Second, even if Professor Ferrell is deemed qualified to testify on these topics, his testimony here would be irrelevant. The Opening Brief demonstrated that general testimony on these topics would be irrelevant. All it would offer is a comparison between ARCP's controls and governance against industry standards (to the extent there are industry standards given that such standards vary significantly from company to company), and whether ARCP did or did not meet industry standards is not at issue here. (Opening Br. at 7-8.) The Government does not dispute the irrelevance of this comparison. Instead, it asserts that the testimony is relevant to provide context to the Indictment's charge that Mr. Block failed to disclose "fraud, whether or not material, that involved management or other employees who had a significant role in ARCP's internal control over financial reporting." (Opp. Br. at 9.) In particular, the Government asserts that the testimony is relevant to the jury understanding the meaning of "management or other employees who had a significant role in ARCP's internal control over financial reporting."

There are three problems with this argument: (1) understanding the meaning of this phrase is properly the subject of the Court's instruction, not testimony from Professor Ferrell; (2) Mr. Block does not intend to dispute that that alleged fraud, if proven, "involved management or other employees who had a significant role in ARCP's internal controls over financial reporting"; and (3) the jury does not need to understand industry standards to evaluate whether the statements in ARCP's 2Q filing are true or not.

Finally, the Opening Brief demonstrated that there was a strong risk of prejudice and confusion if Professor Ferrell were allowed to testify on these topics. This is because it would improperly invite comparison between ARCP's practices and industry standards and the jury to punish Mr. Block for any perceived deficiencies in his performance as CFO. In response, the Government merely offers that Professor Ferrell "will not evaluate or testify about Block's or his co-conspirators' conduct or ARCP's internal controls and governance." (Opp. Br. at 9.) This is no answer because Professor Ferrell's testimony will necessarily invite the jury to make this assessment itself.

The court in *In re Reserve Fund Securities & Derivative Litigation*, No. 09 Civ. 4346, 2012 WL 12356742 (S.D.N.Y. Sept. 10, 2012), faced nearly the same issue. In that case, the court excluded testimony on "good corporate governance" due to the risk that the jury would focus on where the defendant's company practiced good governance rather than the fraudulent conduct alleged in the case. *Id.* at 4.

Accordingly, Professor Ferrell should be precluded from testifying on corporate governance and internal controls.

        C.      <u>The Government's Newly Identified Testimony Should Be Precluded.</u>

The Government's Opposition Brief identifies, for the first time, several additional categories of testimony by Professor Ferrell. Specifically, the Government proffers that Professor Ferrell will: (1) "explain certain fundamentals of the securities industry" and "describe what a stock is, how shares of a stock are issued, the need for publicly traded shares to be registered, and how and where such shares may be traded"; and (2) "testify about the various roles of professionals at public companies, such as chief financial officers and chief accounting

officers, in the process of filing and certifying such public reports with the SEC." (Opp. Br. at 9.) The Government should be precluded from offering this testimony.

First, the Government's disclosure is untimely. The Government had two opportunities to designate expert testimony. It made its initial expert disclosures on April 10, 2017 and declined to make supplemental expert disclosures on May 8, 2017. On both occasions, it failed to designate this testimony. This alone merits preclusion of this material. *Auscape Int'l v. Nat'l Geo. Society*, No. 02 Civ. 6441, 2003 WL 2004463, at *1 (S.D.N.Y. Apr. 28, 2003) (excluding expert testimony where designation was untimely and without excuse); *Forrest v. Par Pharmaceutical, Inc.*, 1 F. App'x 83, 84-85 (2d Cir. 2001) (same).

Second, the proposed testimony on fundamentals of the securities industry is unnecessary and not helpful to the jury. The basics of the stock market are within the ken of the jury as evidenced by the lack of expert testimony in the recent securities fraud cases discussed above. *Snyder v. Wells Fargo Bank, N.A.*, No. Civ. 4496, 2012 WL 4876938, at *4 (S.D.N.Y. Oct. 15, 2012) (excluding proposed expert testimony on custom and practice in the securities industry as addressing "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help" that were more properly elicited from fact witnesses). In addition, the fundamentals of the securities industry have no bearing on what is at issue here: the accounting and disclosures of a REIT.

Third, the proposed testimony on the various roles is also improper. Testimony as to the roles of corporate officers generally is not helpful to understanding the specific roles that individuals played at ARCP. The specific roles of individuals at ARCP can be addressed, to the extent appropriate, by fact witnesses. This testimony is also prejudicial. It will likely invite the same type of improper comparison, discussed above, between how ARCP operated and how

other companies operate.  It will also similarly invite the jury to convict based on any perceived differences between Mr. Block's performance and the description offered by Professor Ferrell. This type of inference is particularly problematic because the role and responsibilities of CFOs will necessarily vary from company to company and this variation is not improper.

Accordingly, the Court should preclude Professor Ferrell from testifying as to the newly identified material.

### III. CONCLUSION

For these reasons, and those stated in the Opening Brief, we respectfully request that the Court exclude the testimony of Professor Ferrell.

Respectfully submitted,

/s/ Reid H. Weingarten
Reid H. Weingarten
Michael C. Miller
Michelle L. Levin
Michael G. Scavelli
Jeffrey A. Novack
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Brian S. Block*

Dated: May 19, 2017