UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

BRIAN BLOCK,
               Defendant.

16-CR-595 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Defendant Brian Block was convicted on all counts of a six-count indictment following a jury trial in June and July of 2017. The offenses relate to Block's preparation of fraudulent financial statements in 2014 for American Realty Capital Properties, Inc. ("ARCP"), a publicly traded real estate investment trust for which he served as Chief Financial Officer.

    On November 8, 2017, this Court sentenced Block to 18 months' imprisonment and a fine of $100,000. Following sentencing, VEREIT, Inc.—the successor entity to Block's former employer, ARCP—submitted a request for an order of restitution against Block in the amount of approximately $35 million. Because the Court concludes that VEREIT is more accurately regarded as a coconspirator than a "victim" of Block's crimes, VEREIT's request for restitution is denied.

I

    Federal courts have no inherent power to order a defendant to pay restitution for his crimes. *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006). However, the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A ("MVRA"), provides that the court "shall order" a defendant to "make restitution" to any "victim" of certain offenses. And the Victim and Witness Protection Act, 18 U.S.C. § 3663 ("VWPA"), provides for restitution awards on a discretionary basis to any "victim" of certain offenses. Both the MVRA and the VWPA define the word

1

"victim" as "a person directly and proximately harmed as a result of" the offense. 18 U.S.C. § 3663A(a)(2); 18 U.S.C. § 3663(a)(2). Block was convicted of two Title 18 offenses that are covered by these statutes: conspiracy to commit securities fraud, to make false filings with the SEC, and to falsify books and records, under 18 U.S.C. § 371 (Count One); and filing a false certification with the SEC under 18 U.S.C. § 1350(c)(1) & (c)(2) (Count Six).

VEREIT claims that it is a victim of Block's crimes and seeks restitution in the amount of $35,004,590.86. This amount represents fees paid to (1) a law firm and a forensic accounting firm for the internal investigation conducted on behalf of VEREIT's Audit Committee beginning in September 2014; (2) another law firm retained by VEREIT to handle the company's cooperation with government investigations (including the Justice Department's prosecution of Block as well as a related SEC investigation); and (3) law firms retained to represent certain current and former employees of VEREIT (including Block).

The Government supports VEREIT's claim for restitution. It acknowledges, however, that "Block's criminal actions were within the scope of his employment and designed to benefit VEREIT, so VEREIT arguably could have been—but ultimately was not—criminally charged as a result of Block's conduct." (Dkt. No. 173, at 4–5 (footnote omitted).)

VEREIT's claim for restitution presents an issue that has yet to be decided by the Second Circuit: whether a corporate employer can claim restitution as a "victim" of its officer's illegal conduct when the corporation itself could have been—but was not—charged with the criminal conduct.[1]

---

[1] In addition to arguing that VEREIT is not a "victim," Block raises a number of other challenges to VEREIT's claim for restitution. The Court does not reach those challenges.

2

II

The Court begins with two principles that are uncontroverted.

First, coconspirators cannot be "victims" under the restitution statutes. In *United States v. Reifler*, the Second Circuit held that it would be "fundamental" error to enter "any order . . . that has the effect of treating coconspirators as 'victims,' and thereby requires 'restitutionary' payments to the perpetrators of the offense of conviction." 446 F.3d at 127. Granting restitution to coconspirators "so adversely reflect[s] on the public reputation of the judicial proceedings" that the *Reifler* court corrected the error *sua sponte*. *Id.*; *accord United States v. Lazarenko*, 624 F.3d 1247, 1252 (9th Cir. 2010) ("We agree with the Second Circuit that, as a general matter, an order of restitution to a co-conspirator is a 'fundamental' error that 'adversely reflect[s] on the public reputation of the judicial proceedings.'" (alteration in original) (quoting *Reifler*, 446 F.3d at 127)).

Second, it also clear that, under appropriate circumstances, corporate entities can be held criminally liable for the illegal actions of their officers. "[A]s a general rule a corporation is liable for the criminal acts of its employees if done on its behalf and within the scope of the employees' authority." *United States v. Demauro*, 581 F.2d 50, 53 (2d Cir. 1978). "The test is whether the agent is performing acts of the kind which he is authorized to perform and those acts are motivated—at least in part—by an intent to benefit the corporation." *United States v. Agosto-Vega*, 617 F.3d 541, 552–53 (1st Cir. 2010) (quoting *United States v. Potter*, 463 F.3d 9, 25 (1st Cir. 2006)) (internal quotation marks omitted).

Based on these principles, the Fourth and Eleventh Circuits have held that employer-corporations cannot recover restitution as "victims" of the crimes of their officers or employees (albeit on fact patterns that are not perfectly analogous to this case). *See In re Wellcare Health Plans, Inc.*, 754 F.3d 1234, 1240 (11th Cir. 2014) (holding the employer-corporation

"responsible for the acts of its top-level executives" and denying "restitution for its own conduct" based, in part, on the corporation's "unqualified admission in [a] deferred prosecution agreement that the company was, in fact, a co-conspirator"); *In re Bankr. Estate of AGS, Inc.*, 565 F. App'x 172, 174 (4th Cir. 2014) (denying restitution because "in the indictment, the government alleged that the defendant used [the corporation] as an instrument in his scheme" and thus the corporation "was one of the means through which the defendant perpetrated the fraud").

Relatedly, the Seventh Circuit has denied restitution to Bank of America in connection with a fraud conviction of its borrower-clients based on the bank's culpable conduct that fell short of coconspirator status:

> Bank of America, though not a coconspirator of the defendants, does not have clean hands. It ignored clear signs that the loans that it was financing at the behest of the defendants were phony.
> . . . .
> To say the bank was merely negligent would be wrong. Recklessness is closer to the mark. . . . Recklessness is knowing involvement in potentially harmful activity. The bank was reckless.
> . . . .
> Restitution for a reckless bank? A dubious remedy indeed . . . .
> . . . .
> Bank of America was deliberately indifferent to the risk of losing its own money . . . .

*United States v. Litos*, 847 F.3d 906, 907–910 (7th Cir. 2017).

On the other hand, the Second Circuit has held that "restitution under the MVRA may not be denied *simply because* the victim had greedy or dishonest motives, where those intentions were not *in pari materia* with those of the defendant." *United States v. Ojeikere*, 545 F.3d 220, 223 (2d Cir. 2008) (emphasis added).

And the Government and VEREIT hasten to point out that the Second Circuit has upheld restitution awards to corporations as "victims" of their own officers' or employees' crimes. *See*

4

*United States v. Cuti*, 778 F.3d 83, 92 (2d Cir. 2015); *United States v. Skowron*, 529 F. App'x 71, 75 (2d Cir. 2013). In those cases, however, it does not appear that the issue of corporate coconspirator status or culpability was raised by the litigants or addressed by court. Therefore they do not appear to constitute precedent on the issue presented here. They certainly do not undermine the governing principle of *Reifler* that coconspirators cannot be victims under the restitution statutes.

Faced with these less-than-pellucid lines of precedent, the Court must determine how to draw the line between "victim" and "coconspirator" for purposes of restitution—a task that other judges have confronted.[2] VEREIT was not a coconspirator in a formal sense: It was not charged, it was not named as an unindicted coconspirator, and it did not admit to such a role. The Government emphasizes, however, that identifying corporate coconspirators "*should not* hinge on whether the Government elected to seek charges against a company, since that decision is sometimes the result of an exercise of prosecutorial discretion." (Dkt. No. 173, at 8 (emphasis in original).) The Court agrees. The decision not to charge a company (or to name it as an unindicted coconspirator) may frequently turn on considerations beyond the corporation's culpability or the likelihood of a conviction.

A number of considerations persuade the Court that, at least in the circumstances of this case, VEREIT is not property treated as a "victim" of Block's crimes for purposes of the restitution statutes.

---

[2] *See United States v. Chinea*, 14 Cr. 240, Dkt. No. 50 at 13:4–7 (S.D.N.Y. March 27, 2015) ("I don't need . . . to try to figure out where the law draws the line when it comes to corporate misbehavior between being a victim and being a co-conspirator. Wherever that line must be, I know which side we're on.") (Cote, J., channeling *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring) ("I know it when I see it.")).

5

First, Block's actions fall squarely within the scope of criminal conduct that is attributable to a corporate employer. Block was acting both within the scope of his employment as an executive officer of the company and, importantly, *to benefit the company*. *See Agosto-Vega*, 617 F.3d at 552–53. This fact distinguishes this case from those involving insider trading and employees' self-dealing. *See, e.g., United States v. Gupta*, 925 F. Supp. 2d 581 (S.D.N.Y. 2013), *aff'd*, 747 F.3d 111 (2d Cir. 2014); *United States v. Ebrahim*, No. 12 Cr. 471, 2013 WL 2216580 (S.D.N.Y. May 21, 2013). The evidence at trial showed that Block's insertion of fraudulent plug numbers in ARCP's quarterly filing served the purpose of meeting a key earnings metric for the current quarter, while also disguising problematic accounting from prior periods. Block was surely motivated by financial gain, but such gain was a function of anticipated gain by the company. Indeed, the direct and proximate effect of his conduct was to inflate VEREIT's share price. That benefit was short-lived, of course, but only because his fraud and the problematic accounting were discovered several weeks later.

Second, although the Government did not charge VEREIT as a coconspirator in this case, the corporate culture and the "tone at the top" were major themes at trial. From the Government's summation:

> Now, there is no serious dispute here that AFFO [adjusted funds from operations] was enormously important to ARCP and its investors. . . .
> And there was no serious dispute that internally at ARCP, ARCP management obsessed over AFFO. You saw the company's own mouse pad . . . .
> So this mouse pad literally spells out the company's AFFO per share goals in a way that is told to the entire company, to all employees. And the goal for 2014, AFFO greater than a dollar 16 per share. Everyday when ARCP's employees came into work, this is what they saw on their desks.
> And inside ARCP it was expected that ARCP would hit or reach its guidance. You saw Government Exhibit 1000. This is an e-mail from Nick Schorsch, the chairman of the company back at

6

> the beginning of 2014. And what is Schorsch telling his team? "We must always hit our numbers." You know what he's talking about here. He's talking about the company's own internal guidance.

(Dkt. No. 146 ("Trial Tr.") 2306–07).

A few minutes later, the Government highlighted evidence that even more pointedly implicated the CEO and Chairman, if not the company itself, in the conspiracy:

> And you remember Nick Schorsch's phone call with Block when [Block] was manipulating the recap spreadsheet. Remember [Lisa] McAlister told you about what happened on that call. It was on speaker phone. This is what she overheard Schorsch say, the chairman of the company. "Nick just said, 'It's in the deferred financing costs. There's your answer. You know what you need to do.'"
> Ladies and gentlemen, you know what's going on here. This is a call discussing how to carry out this fraud, where to bury a fraudulent plug number into the AFFO table. That's what they are agreeing to do on this call.

(Trial Tr. 2327–28.) The evidence at trial suggested that VEREIT—or to be precise, ARCP as it existed in 2014—was more of a coconspirator than a victim of Block's fraud.

Finally, it is worth considering the public interest and the incentives that would be furthered by treating the company as a victim in these circumstances. VEREIT presents a strong argument that the company should be rewarded, not penalized, for taking the action it took upon learning of the allegations of fraud and questionable accounting—hiring law firms to conduct an internal investigation and to cooperate with the Government. (Dkt. No. 186, at 15–16.) That is conduct that certainly deserves credit and ought to be encouraged. However, an even more important incentive is to prevent the circumstances that give rise to fraud and questionable accounting in the first place. That incentive is not advanced by allowing a company to play the victim card after the fact.

It might be tempting to focus on VEREIT as if it were a completely different entity from the old ARCP. To be sure, after the accounting scandal of 2014, ARCP cleaned house. The company replaced Board members and its senior management team (including its founder and CEO). It even gave itself a new name in 2015: VEREIT—from the Latin word *veritas*, for "truth."

But all of that happened *after* the period of criminal conduct in this case. Indeed, it happened after six quarters of financial statements that later required correction (but were not the subject of criminal prosecution). And it happened only after a whistleblower wrote an email to ARCP's outside auditor on September 6, 2014—an email that flagged the accounting issue that led to Block's prosecution, but also complained about the company's obsessive focus on earnings and the tone at the top.

The question is not whether the company transformed itself into a victim, but whether it was genuinely a victim—as opposed to a coconspirator—at the time of the crimes. The Court concludes that it was not a victim.

III

For the foregoing reasons, the Court concludes that VEREIT is not entitled to restitution as a victim under the MVRA or the VWPA. Accordingly, its request for restitution is DENIED.

SO ORDERED.

Dated: February 6, 2018
      New York, New York

_____
J. PAUL OETKEN
United States District Judge